UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
D'AMICO DRY D.A.C., :
:
Petitioner, :
:
and : 20 Civ. 6256 (JPC)
:
: ORDER
:
TREMOND METALS CORPORATION, :
:
Respondent. :
:
-----------------------------------------------------------------X

JOHN P. CRONAN, District Judge:

Petitioner d'Amico Dry D.A.C. ("d'Amico Dry") and Respondent Tremond Metals Corporation ("Tremond") participated in an arbitration proceeding in London to resolve a shipping dispute. The Arbitrator issued two awards, Dkt. 26 ("Second Amended Petition"), Exh. 1 ("Final Award"), Exh. 2 ("Costs Award," and collectively with the Final Award, the "Awards"), in d'Amico Dry's favor. Now before the Court is d'Amico Dry's Second Amended Petition seeking confirmation of both Awards. *See* Second Amended Petition. For the reasons set forth below, the Second Amended Petition is granted.

## I. Background

**A. Facts**

d'Amico Dry is a dry bulk vessel owner and operator incorporated in the Republic of Ireland with its registered office in Dublin. *Id.* ¶ 2. Tremond, which is incorporated in and has its principal place of business in New York, is a trader in ferro alloys, ores, concentrates, metals, and raw materials for the metallurgical, steel, and foundry industries. *Id.* ¶ 3. In June 2019, d'Amico Dry and Tremond entered into a Booking Note, pursuant to which d'Amico Dry was to carry a

shipment of cargo from Brazil to China. *Id.* ¶ 6. The shipment was delayed, and d'Amico Dry demanded arbitration, seeking demurrage charges—*i.e.*, "liquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time," Demurrage, Black's Law Dictionary (11th ed. 2019)—at the load and discharge ports. Second Amended Petition ¶ 7; Final Award at 3.

Tremond did not initially respond when d'Amico Dry pursued arbitration. Accordingly, d'Amico Dry appointed David Lucas as the sole Arbitrator in accordance with the London Arbitration Act, which allows one party to appoint an arbitrator if the other party defaults. Second Amended Petition ¶ 8; Final Award at 4-5. Tremond, through counsel, then appeared at the arbitration, actively participated in it, and raised a counterclaim of its own. Second Amended Petition ¶¶ 7, 9. Tremond's counsel did not object to Lucas's appointment as the sole Arbitrator. Final Award at 5.

On February 24, 2020, after reviewing extensive briefing from the parties, the Arbitrator issued the Final Award in favor of d'Amico Dry. Second Amended Petition ¶ 10. The Arbitrator granted d'Amico Dry a total demurrage award of $67,260.42, and interest starting 21 days after the laytime/demurrage statements from the load and discharge ports were issued (August 28, 2018 and October 22, 2018, respectively), at the rate of 4%, compounded quarterly until paid. *Id.* ¶¶ 10, 14. The interest, as of today's date, equals $7,478.96. The Arbitrator also required Tremond to bear his fee of £15,000, equating to $19,528.52, or reimburse d'Amico Dry that amount if it paid the fee first, and ordered 4% interest compounded quarterly until paid. *Id.*; Final Award at 57.[1]

---

[1] Tremond does not challenge d'Amico Dry's conversions from British pounds to U.S. dollars. Accordingly, the Court adopts d'Amico Dry's U.S. dollar totals.

The interest on the Arbitrator's fees, as of today's date, equals $930.90. The Arbitrator denied Tremond's counterclaim. Second Amended Petition ¶ 10; Final Award at 56.

The Arbitrator reserved jurisdiction to assess d'Amico Dry's legal fees and costs associated with the arbitration. Second Amended Petition ¶ 10; Final Award at 57. On September 7, 2020, the Arbitrator issued the Costs Award. The Arbitrator awarded £40,000 in costs, equating to $54,919.80, and £2,400 in Arbitrator Costs, equating to $3,179.81, plus interest at a rate of 4%, compounded quarterly until paid. Second Amended Petition ¶¶ 11, 13, 14; Costs Award. The interest on those awards currently totals $2,771.35. Tremond did not appeal either award, and the time to do so has expired. Second Amended Petition ¶ 12.

**B. Procedural Background**

On August 7, 2020, d'Amico Dry filed a Petition to confirm the Final Award. Dkt. 1. Four days later, on August 11, 2020, d'Amico Dry filed an Amended Petition. Dkt. 4. In its Amended Petition, d'Amico Dry represented that "[a]n award on [the costs] [was] forthcoming and w[ould] be included in an Amended Petition in due course." *Id.* ¶ 13. On October 22, 2020, the Court ordered d'Amico Dry to file and serve any additional materials in support of its Amended Petition by November 18, 2020, Dkt. 11, after which d'Amico Dry filed a memorandum of law in support of its Amended Petition, *see* Dkt. 13. d'Amico Dry attached the Costs Award to that brief. *See id.* at 7; Dkt. 14, Exh. 2. On December 4, 2020, Tremond submitted an affidavit from its principal, Renato Tichauer, in opposition to the Amended Petition. Dkt. 16, Exh. 1 ("First Opposition"). On December 10, 2020, d'Amico Dry filed a reply in further support of its Amended Petition. Dkt. 18 ("First Reply").

On April 8, 2021, the Court ordered d'Amico Dry to clarify whether it intended to amend its Amended Petition to seek confirmation of the Costs Award. Dkt. 22. Later that day, d'Amico

Dry requested leave to file a Second Amended Petition to confirm both Awards. Dkt. 23. Tremond filed a letter opposing the motion to amend, arguing that d'Amico Dry "should file a proper petition." Dkt. 24. The Court concluded that Tremond had not provided any compelling reason why leave to amend should be denied, and therefore granted d'Amico Dry leave to amend. Dkt. 25. However, the Court permitted Tremond to file a second opposition to address the Costs Award specifically. *Id.*

d'Amico Dry filed its Second Amended Petition on April 19, 2021. Tremond filed its opposition addressing the Costs Award on April 29, 2021. Dkt. 27 ("Second Opposition"). d'Amico Dry filed a reply on April 30, 2021. Dkt. 28 ("Second Reply").

## II. Discussion

### A. Applicable Law

The Court has jurisdiction over the Second Amended Petition pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *codified at* 9 U.S.C. §§ 201-208, and section 203 of the Federal Arbitration Act, 9 U.S.C. § 203, which provides for jurisdiction over an action "falling under the Convention." *See* Convention Article I(1) (providing that the Convention will "apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought").

The Convention provides that a court "shall confirm" an arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Article V of the Convention specifies seven exclusive

4

grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); Convention, Article V; *Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A.*, No. 19 Civ. 11654 (ALC), 2020 WL 7261111, at *3 (S.D.N.Y. Dec. 10, 2020) (listing the seven grounds). Specifically, it provides that recognition and enforcement of an award "may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (a) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; (b) the party against whom the award is invoked "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" (c) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;" (d) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or (e) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Convention, Article V. Recognition and enforcement may also be refused if "the competent authority in the country where recognition and enforcement is sought finds that" (a) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (b) "[t]he recognition or enforcement of the award would be contrary to the

5

public policy of that country." *Id.* A court "is strictly limited" to these seven defenses set forth under the Convention, and the burden is on the party opposing enforcement to prove that one of those defenses applies. *Encyclopaedia Universalis S.A.*, 403 F.3d at 90. That burden is a "heavy one, as 'the showing required to avoid summary confirmance is high.'" *Id.* (citing *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

**B. Analysis**

Before turning to Tremond's objections, the Court first briefly acknowledges d'Amico Dry's argument that the Court should enter default against Tremond because, at the time it filed its first opposition, counsel had not filed a notice of appearance. First Reply at 1-2. It is not clear what benefit that would provide d'Amico Dry, as it is well-settled that if a petition to confirm an arbitration award is unopposed, courts should still treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). The Court therefore declines to enter default as to Tremond and turns to the merits of the Second Amended Petition, considering the arguments raised by Tremond in its opposition briefs.

Tremond has not met its burden to prove that one of the grounds in Article V of the Convention applies here. In fact, Tremond does not point to any enumerated ground that would permit the Court to refuse to recognize either Award. Instead, Tremond makes three primary arguments against confirmation. First, Tremond contends that "[t]he unreasonable decisions by the Arbitrator strongly suggest[] that the Arbitrator lacked impartiality and favored" d'Amico Dry. First Opposition at 4; *see also* Second Opposition at 1. Second, Tremond argues that it "does not have financial conditions or means to pay" the Awards and that its owner is "personally fighting to keep it alive," which "will be impossible having a lawsuit on its head that could not be satisfied." First Opposition at 4. Finally, Tremond highlights that it had attempted to settle the matter with

6

d'Amico Dry, and during settlement discussions d'Amico Dry admitted that it had declined to seek insurance coverage because it might raise its premium. *Id.* at 3-4; Second Opposition at 2.

Although the Court sympathizes with Tremond, none of these excuses are sufficient grounds under Article V of the Convention that would allow the Court to refuse to confirm either Award. First, without citing any legal precedent to support its argument, Tremond maintains that the Arbitrator was biased, and misapplied the law to protect d'Amcio Dry from liability. *See* First Opposition at 2-3; Second Opposition at 1. Nor does Tremond point to any evidence that would permit the Court to conclude that the Arbitrator was biased when he conducted the arbitration proceeding. These arguments plainly are insufficient for the Court to disrupt the Awards. "[C]onclusory allegations of bias[] and dissatisfaction with the result of arbitration are not sufficient bases for vacating an award." *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1278-79 (S.D.N.Y. 1992) (collecting cases); *see also Beljakovic v. Melohn Props., Inc.*, No. 04 Civ. 3694 (JMF), 2012 WL 5429438, at *3 (S.D.N.Y. Nov. 7, 2012) ("To the extent that Petitioner alleges that [the arbitrator] was biased against him, his claim fails, as he offers no evidence of [the arbitrator's] bias, partiality, or corruption beyond conclusory statements and speculation."), *aff'd*, 542 F. App'x 72 (2d Cir. 2013). Although Tremond may not have been happy with the Arbitrator's result, that simply does not compel the conclusion that the Arbitrator was biased against it or that the Awards were otherwise invalid.

Nor is Tremond's reliance on its financial condition helpful. Although the Court recognizes Tremond's circumstances, there is simply no provision in the Convention that allows a party to escape judgment because of their financial situation.

Finally, the fact that d'Amico Dry refused to settle and did not claim insurance coverage does not somehow invalidate either the Final Award or the Costs Award. d'Amico Dry argues

7

that evidence of settlement discussions is "irrelevant" and prohibited under Rule 408 of the Federal Rules of Evidence. First Reply at 4; Second Reply at 5. Although Rule 408 covers the admissibility of evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," *see* Fed. R. Civ. P. 408(a), which Tremond does not appear to be doing here, the Court nonetheless agrees that these discussions are not relevant to the question of whether the Court should confirm the Awards.

Simply put, Tremond does not point to anything under the Convention or any other applicable law that would allow the Court to refuse to confirm the Awards. Tremond does not argue, for instance, that the arbitration agreement was invalid, or that the procedure for appointing the Arbitrator was contrary to law or any agreement in the Booking Note. *See* Convention Article V. Because Tremond has not met its burden, the Court confirms both Awards.

### III. Conclusion

For the reasons stated above, the Second Amended Petition is granted. The Clerk of the Court is respectfully directed to enter judgment in the amount of $156,069.76, with interest accruing thereon at a rate of 4% *per annum* compounded quarterly. The Clerk of the Court is also respectfully directed to close this case.

SO ORDERED.

Dated: May 5, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge